```
                                                    USDC SDNY
                                                    DOCUMENT
                                                    ELECTRONICALLY FILED
                                                    DOC# _____
UNITED STATES DISTRICT COURT                        DATE FILED: 7-13-17
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
UNITED STATES OF AMERICA,              :
                                       :
              Plaintiff-Intervenor,    :    12 Civ. 3674 (JGK)
                                       :
      v.                               :    CONSENT ORDER
                                       :
NARCO FREEDOM, INC., ALAN BRAND,       :
GERALD BETHEA, JOINING HANDS           :
MANAGEMENT INCORPORATED, BERNARD       :
RORIE and DEVORAH HAIGLER,             :
                                       :
              Defendants.              :
------------------------------------- x
```

WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Stipulation") is entered into by and among plaintiff the United States of America (the "United States" or the "Government"), by its attorney Joon H. Kim, Acting United States Attorney for the Southern District of New York, and defendants Devorah Haigler ("Haigler") and Joining Hands Management Incorporated ("Joining Hands"), through their authorized representative;

WHEREAS, Joining Hands is a New York corporation that formerly maintained its principal place of business in Brooklyn, New York;

WHEREAS, Joining Hands formerly operated group homes that provided short-term group housing, known as "three-quarter houses," to individuals recovering from substance abuse;

WHEREAS, Haigler owns and formerly operated Joining Hands along with her cousin, Bernard Rorie ("Rorie");

WHEREAS, this action was initiated under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, on or about May 8, 2012, and the United States intervened in the action on March 10, 2016, and filed a complaint-in-intervention ("United States Complaint") on

May 5, 2016, naming Joining Hands and Haigler as defendants, among others;

WHEREAS, the United States Complaint alleges, as against Joining Hands and Haigler, that Joining Hands and Haigler (collectively, "Defendants") violated the False Claims Act, 31 U.S.C. § 3730(b) ("FCA") and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, by accepting kickbacks in the form of cash payments from Narco Freedom, Inc. ("Narco Freedom"), an operator of outpatient substance abuse rehabilitation programs and, in exchange for these payments, referring the residents of Joining Hands houses to Narco Freedom outpatient programs and enforcing the residents' attendance at those programs (the "Covered Conduct");

WHEREAS, the United States and the Defendants (collectively, the "Parties") have reached a full and final, mutually agreeable resolution of the claims they have asserted arising out of the Covered Conduct;

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. Defendants agree that the Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over them.

2. The consent judgment (the "Judgment") attached to this Stipulation as Exhibit A shall be entered against Defendants and in favor of the United States in the amount of $141,180 (the "Settlement Amount"). The Settlement Amount shall be paid by Defendants in accordance with the following terms: (i) the first payment, in the amount of $1,353, shall be made within 30 days of the entry of this Consent Order; (ii) another payment in the amount of $1,000 shall be made within 60 days of the entry of this Consent Order; (iii) another payment in the amount of $23,530 shall be made within 6 months of the entry of the Consent Order; (iv) another payment in the amount of $47,060 shall be made within 9 months of the entry of the Consent Order; and (v) the remaining $68,237 payment shall be made within a year of the entry of the Consent

Order. Interest compounded annually at the rate of 2.4%, which is the current Medicare Trust Fund interest rate, shall be applied starting 6 months from the entry of the Consent Order. For purposes of this Stipulation, the term Settlement Amount shall include such interest. Defendants shall make payments of the Settlement Amount by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of New York.

3.  Defendants shall have the right to pre-pay the entire balance due without penalty and may tender payments in amounts greater than those stipulated in Paragraph 2.

4.  In the event Defendants fail to make any of the payments set forth in Paragraph 2 above (inclusive of interest) on the date such payments are due, the full amount of the Settlement Amount shall immediately be due and owing and the United States may take action to execute on the Consent Judgment. In addition, the United States, at its option, may: (a) rescind this Stipulation and reinstate its Complaint filed in this action as to Defendants or seek specific performance of this Stipulation; (b) offset the remaining unpaid balance from any amounts due and owing Defendants by any department, agency or agent of the United States; or (c) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct. In the event the Settlement Amount is not paid in full, Defendants shall not contest any offset imposed or any collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any court. In addition, in the event the Settlement Amount is not paid in full, Defendants shall pay to

the United States all reasonable costs of collection and enforcement under this Paragraph, including attorney's fees and expenses. In the event that the United States opts to seek specific performance of this Stipulation, interest shall accrue at the rate of 9% per annum compounded annually on the payment that is due under Paragraph 2 above. Notwithstanding the foregoing, in the event the Settlement Amount is not paid in full, the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services may exclude Defendants from participating in all Federal health care programs until Defendants pay the Settlement Amount as set forth in Paragraph 2, above. OIG-HHS will provide written notice of any such exclusion to Defendants. Defendants waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Defendants wish to apply for reinstatement, Defendants must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Defendants will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

    5.    Defendants admit, acknowledge and accept responsibility for the following facts:

        a. In 2008, Joining Hands and Narco Freedom reached an agreement whereby Narco Freedom would pay $15,000 per month to Joining Hands and in exchange, Joining Hands would refer individuals residing in its three-quarter houses, located at 1662 and 1664 Dean Street, Brooklyn, New York (the "Joining Hands houses"), to Narco Freedom outpatient programs, and would allow individuals already attending Narco Freedom outpatient programs to continue to live in the Joining Hands houses. Haigler was aware of, and

4

consented to, this agreement.

b. Contemporaneous with the making of this agreement, Joining Hands entered into a contract with Narco Freedom styled as a "lease agreement." The contract provided that Narco Freedom would pay Joining Hands $15,000 each month. The contract did not, however, memorialize an actual lease agreement between Narco Freedom and Joining Hands.

c. After Joining Hands entered into the contract, Narco Freedom began to make monthly payments to Joining Hands. Bernard Rorie, Joining Hands co-owner, collected the payments, which were made by check, at the Narco Freedom office each month.

d. Joining Hands kept track of the attendance of its three-quarter house residents at Narco Freedom outpatient programs by collecting slips of paper provided to the residents by Narco Freedom. It was the policy of Joining Hands in all of its facilities that tenants had to maintain attendance at an outpatient treatment program in order to reside in the Joining Hands houses.

e. In 2009 and 2010, Joining Hands opened three additional Joining Hands houses, located at 115 Ralph Avenue, 38 Covert Street, and 409 Chauncey Street, all in Brooklyn, New York. For each of these houses, Joining Hands entered into similar agreements with Narco Freedom, each of which was termed a "lease agreement" but did not memorialize an actual lease agreement.

f. Between 2008 and 2011, Joining Hands received payments from Narco Freedom in amounts ranging from $4,000 to $15,000 per month, per house, pursuant to its agreements with Narco Freedom.

6. Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Stipulation. Specifically, Defendants agree that they shall (a) provide complete and truthful disclosure of all non-privileged information as may be required by the United States in connection with any investigation or enforcement action, relating to the Covered Conduct, the allegations in the United States' Complaint, or any other investigation into similar conduct or a related enforcement action by the United States; and (b) provide testimony as requested by the United States in connection with any such investigation or enforcement action. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of any owners, officers, and employees of Joining Hands, and shall use their best efforts to make available, and encourage, the cooperation of former owners, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning any investigation of the Covered Conduct that they have undertaken, or that has been performed by another on their behalf.

7. Defendants agree to the following:

a. In connection with any current or future three-quarter house owned, operated, or in any way affiliated with Defendants, Defendants shall be enjoined from making or receiving payments of any kind, including monetary or in-kind compensation, in exchange for referrals of or recommendations to three-quarter house residents for any medical care or service that is paid for or subsidized in any way by a Federal health care program, as that term is defined by statute.

b. In connection with any current or future three-quarter house owned, operated, or in any way affiliated with Defendants, Defendants shall post and maintain a sign in a high-visibility location in at least two common areas, stating that residence at the house is not conditioned upon the enrollment in or attendance at any outpatient program, and that residents have the right to choose their health care provider for any and all medical services. This notice shall be posted within seven days of the entry of this Order. The form of this notice shall be approved in advance by the United States Attorney's Office for the Southern District of New York, and shall include a phone number that residents can call to report any actions that are inconsistent with the terms of the notice.

c. In connection with any current or future three-quarter house owned, operated, or in any way affiliated with Defendants, Defendants shall be enjoined from requiring residents to provide information relating to enrollment or attendance at an outpatient program, from any of its residents.

8. Defendants warrant that they have reviewed their financial situation and that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent

7

exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

9. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendant as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets, Defendants agree as follows:

a. Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) any Defendant was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

b. If Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases

8

provided in Paragraph 11, below. Defendants agree that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 30 calendar days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on May 3, 2016; and (iii) the United States has a valid claim against Defendants, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c. Defendants acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement

10. Defendants have provided sworn financial disclosure statements ("Financial Disclosures") to the United States and the United States has relied on the accuracy and completeness of those Financial Disclosures in connection with its assessment of Defendants' ability to pay a monetary settlement. Defendants warrant that the Financial Disclosures are complete, accurate, and current as of the date of the Financial Disclosures. If the United States learns of asset(s) in which either of the Defendants had an interest at the time of the submission of the Financial Disclosure that were not disclosed in the Financial Disclosures, or if the United States learns of any misrepresentation by either Defendant on or in connection with the Financial

9

Disclosures, and if such nondisclosure or misrepresentation increases the estimated net worth set forth in the Financial Disclosures by $10,000 or more, the United States may at its option: (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the Settlement Amount, pursuant to Paragraph 2, plus 100% of the value of the net worth of Defendant previously undisclosed, all of which shall immediately be due and payable in full. Defendants agree not to contest any collection action undertaken by the United States pursuant to this provision, and will immediately pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

11. Subject to the exceptions in Paragraph 12 below (concerning excluded claims), and conditioned upon Defendants' full compliance with Paragraphs 2, 6, 7, and any other terms of the Stipulation that apply to Defendants, the Government, on behalf of itself, its officers, agencies and departments, releases Defendants from any civil or administrative monetary claim the Government has under the FCA; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and the common law theories of payment by mistake, unjust enrichment, and fraud, for the Covered Conduct. For avoidance of doubt, this Stipulation does not release Rorie or any other individual or entity other than Defendants.

12. Notwithstanding the release given in Paragraph 11 of this Stipulation, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as expressly stated in this Agreement, any administrative liability;

d. Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based on obligations created by this Stipulation; and

f. Except for Haigler, any liability of individuals.

13. Defendants waive and shall not assert any defenses they may have to any federal criminal prosecution or federal administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such federal criminal prosecution or federal administrative action. Nothing in this Paragraph or any other provision of this Stipulation constitutes an agreement by the Government concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

14. Defendants fully and finally release the Government, and its agencies, officers, employees, servants, and agents, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Government, and its agencies, officers, employees, servants, and agents, related to the Covered Conduct and the Government's investigation, prosecution and settlement thereof.

15. The Settlement Amount shall not be decreased, and the Judgment shall not otherwise be affected, as a result of any administrative decision made subsequent to the Effective Date, including the denial of claims for payment submitted by or on behalf of Defendants by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or

any state payer; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, and agree not to appeal any such denials of claims.

16. Defendants agree to the following:

   a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents, in connection with:

      (1) the matters covered by this Stipulation;

      (2) the United States' civil investigation of the Covered Conduct;

      (3) the investigation, defense, and corrective actions undertaken by Defendants in response to the United States' civil investigation of the Covered Conduct (including attorney's fees);

      (4) the negotiation and performance of this Stipulation; and

      (5) any payments Defendants make to the United States pursuant to this Stipulation, the attached Judgment,

      are unallowable costs for government contracting purposes ("Unallowable Costs").

   b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with

12

the United States, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates.

c. Treatment of Unallowable Costs Previously Submitted for Payment:
Defendants further agree that within 90 days of the Effective Date of this Stipulation, they shall identify any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment. Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Stipulation shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17. Defendants agree that they waive and shall not seek payment for any health care billings related to the Covered Conduct from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors.

18. This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims they may have against any other person or entity.

19. Any failure by the Government to insist upon full performance of any of the provisions of this stipulation shall not be deemed a waiver of any of the provisions, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full performance of any or all provisions of this Stipulation.

20. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, it shall be deemed to have been drafted by each of the Parties and shall not, therefore, be construed against any party for that reason in any subsequent dispute.

21. Each party shall each bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

22. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

23. This Stipulation may be executed in counterparts, each of which constitutes an

original and all of which constitute one and the same Stipulation. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

24. Any notice pursuant to this Stipulation shall be in writing and shall be delivered by e-mail transmission, followed by postage-prepaid mail, to the following representatives:

> To the Government:
> Cristine Phillips and Kirti Reddy
> Assistant United States Attorneys
> United States Attorney's Office, Southern District of New York
> 86 Chambers Street, 3rd Floor
> New York, NY 10007
> E-mail:   Cristine.Phillips@usdoj.gov
>           Kirti.Reddy@usdoj.gov

> To Defendants:
> Gary Villanueva, Esq.
> 11 Park Place, Suite 1601
> New York, NY 10007
> garyvillanueva@aol.com

25. The effective date of this Stipulation is the date upon which this Stipulation is entered by the Court (the "Effective Date").

26. This Stipulation constitutes the complete agreement between the Parties. This Stipulation may not be amended except by written consent of the Parties.

*For the United States*

Dated: New York, New York
June 27, 2017

    JOON H. KIM
    Acting United States Attorney for the
    Southern District of New York

By: *[signature: Kirti Vaidya Reddy]*
    Kirti Vaidya Reddy
    Cristine Irvin Phillips
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, New York 10007


*For the Office of Inspector General,*
*U.S. Department of Health and Human Services*

Dated: Washington, District of Columbia
June 23, 2017

By: *[signature: Lisa M. Re]*
    Lisa M. Re
    Assistant Inspector General for Legal Affairs
    Office of Counsel to the Inspector
    General
    Office of Inspector General
    United States Department of Health
    and Human Services

*For Joining Hands and Haigler*

Dated: New York, New York
       June 26, 2017

By:    */s/ Gary S. Villanueva*
       Gary S. Villanueva, Esq.
       11 Park Place, Suite 1601
       New York, New York 10007
       Tel.: 917.992.6673

*/s/ Devorah Haigler*
Devorah Haigler

Dated: New York, New York
~~June ___, 2017~~
July 13, 2017

SO ORDERED:

*/s/ John G. Koeltl*
HONORABLE JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE

17